UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
CATHARINE E. DAVIS,

      Plaintiff,  **MEMORANDUM AND ORDER**
             10-cv-3812 (KAM)(LB)

 -against-


NYC DEPARTMENT OF EDUCATION,
LISA LINDER

      Defendants.
--------------------------------------X

**MATSUMOTO, United States District Judge:**

   On August 17, 2010, Catharine E. Davis ("plaintiff")
commenced this *pro se* action pursuant to the Americans with
Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112–12117,
alleging discrimination in the terms and conditions of her
employment by the New York City Department of Education ("DOE")
and Lisa Linder ("Linder"), the principal of Intermediate School
("I.S.") 302 (collectively, "defendants").  Presently before the
court is defendants' motion to dismiss the Complaint pursuant to
Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  For the
reasons set forth below, defendants' motion to dismiss is
granted in part and denied in part.

**BACKGROUND**

**I. Complaint Allegations and Procedural History**

   The following facts, taken from plaintiff's *pro se*
Complaint and from her Opposition and Sur-Reply to defendants'

motion to dismiss, are assumed to be true for the purpose of the instant motion.[1] (*See generally* ECF No. 1, Complaint ("Compl."); ECF No. 20-8, Plaintiff's Affidavit/Affirmation In Opposition to Defendants' Motion, dated 4/11/2011 ("Pl. Opp."); ECF No. 21, Amended Reply to Plaintiff's Initial Opposition to Defendant's Motion to Dismiss, dated 5/9/2011 ("Pl. Sur-Reply.").) Plaintiff worked as a certified health teacher at I.S. 302 from 2002 to 2009. (ECF No. 1, Compl. at 6.)[2] Plaintiff alleges that from 2002 through the school year ending in 2007, she received satisfactory performance evaluations. (*Id.*) For the school years ending in 2008 and 2009, however, plaintiff asserts that the school's principal, Linder, evaluated plaintiff's performance as unsatisfactory. (*Id.*)

On October 29, 2008, plaintiff was involved in an automobile accident that she alleges left her disabled for three months, until January 31, 2009. (*Id.*) A disability claim form signed by plaintiff and dated December 8, 2008, states that she was diagnosed with a "c-spine injury, rt. shoulder injury, [and]

---

[1] Although the court's considerations are generally limited to the pleadings when deciding a Rule 12(b)(6) motion to dismiss, because plaintiff's *pro se* Complaint must be construed liberally, it is "appropriate to consider plaintiff's additional materials, such as [her] opposition memorandum." *Burgess v. Goord*, No. 98-CV-2077, 1999 WL 33458, at *2 n.1 (S.D.N.Y. Jan. 26, 1999) (quoting *Gadson v. Goord*, No. 96 Civ. 7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1977)).

[2] The page numbers cited herein are those automatically assigned by the court's electronic case filing system.

lumbar back disorder" with symptoms of pain from all three injuries. (ECF No. 20-8, Pl. Opp. at 10.) The date of plaintiff's first treatment for these injuries was October 30, 2008. (*Id.*) After plaintiff used her last sick day, she was given a "grace period" from November 8, 2008 to December 7, 2008, (*see id.*), and the DOE granted plaintiff a "leave of absence without pay . . . for restoration of health from 12/8/08 to 1/30/09," (ECF No. 21, Pl. Sur-Reply at 6). During plaintiff's absence, an unlicensed substitute teacher, who plaintiff alleges was a personal friend of Linder's, covered plaintiff's teaching responsibilities. (ECF No. 1, Compl. at 6.)

Plaintiff alleges that while she was on leave, Linder offered to assess plaintiff's annual performance as "satisfactory" as long as plaintiff agreed to give up her job as health teacher and accept a job as chorus teacher, a position for which plaintiff had no license or experience. (*See* ECF No. 21, Pl. Sur-Reply at 3). Plaintiff contends that this "proposition" was motivated by Linder's desire to give plaintiff's job as health teacher to the substitute teacher, who was Linder's friend. (*Id.*) Plaintiff asserts that she

nevertheless received an unsatisfactory rating because Linder
failed to follow through on her "proposition."[3] (*Id.*)

When plaintiff returned to work, the school's Union
Chapter Leader informed her that she would have to share her
$3,000 year-end cash bonus with the substitute teacher who had
covered her teaching responsibilities during her absence. (ECF
No. 1, Compl. at 6.) As a result, plaintiff received a bonus of
only $1,000. (*Id.*) Plaintiff alleges that the $3,000 year-end
bonus was allotted to her based on her inclusion in the school's
Table of Organization as a tenured, state-certified teacher, and
the distribution of her bonus to the non-certified substitute
teacher was contrary to the terms of the Collective Bargaining
Agreement ("CBA") established by the DOE and plaintiff's labor
union. (*See* ECF No. 1, Compl. at 6; ECF No. 20-8, Pl. Opp. at
3-4; ECF No. 21, Pl. Sur-Reply at 2.)[4]

---

[3] It is not clear from plaintiff's submissions whether, in stating that Linder
failed to follow through on her proposition, plaintiff means that Linder did
not ultimately fill plaintiff's position as health teacher with the
substitute, or that Linder still gave plaintiff an unsatisfactory rating even
though plaintiff did accept the job as chorus teacher.

[4] The terms and conditions of plaintiff's employment with DOE as a teacher are
governed by the CBA entered into by the DOE and the United Federation of
Teachers ("UFT"). (*See* ECF No. 20-4, Agreement between The Board of
Education of the City School District of the City of New York and United
Federation of Teachers Local 2, American Federal of Teachers, AFL-CIO ("CBA
Agmt.") at 1-2; *see also* ECF No. 20-8, Pl. Opp. at 3-4.) Pursuant to the
CBA, educators participate in a school-wide bonus program, which awards them
"substantial cash bonuses for student achievement gains." (ECF No. 20-5, CBA
Agmt. at 52.) The CBA further states that "each Participant School will
determine the methodology for distributing any award it earns for school-wide
performance" but that "[t]he size of each Participant School's total award
for distribution in 2007-08 shall be the number of full-time UFT-represented
employees on the school's table of organization times three thousand dollars
($3,000)." (*Id.* at 53.) The CBA directs each school to form a compensation

4

On June 4, 2010, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that the DOE and Linder discriminated against her based upon her alleged disability. (*See* ECF No. 1, Compl. at 4.) On June 24, 2010, the EEOC decided that, based upon its investigation, it was "unable to conclude that the information obtained establishe[d] a violation of the [law]." (*Id*. at 7.) The EEOC issued plaintiff a "right to sue" letter. (*See id*.)

On August 17, 2010, plaintiff filed the instant action, alleging that defendants discriminated against her because of her disability, by evaluating her performance as unsatisfactory and by denying her the full amount of her bonus. (*See id*. at 6.) On August 27, 2010, the court denied plaintiff's motion for leave to proceed *in forma pauperis*. (ECF No. 3, Order, dated 8/27/2010.) On March 10, 2011, the court

---

committee that decides eligibility for and the size of individual awards to UFT-represented staff members. (*Id*.) The CBA provides that the compensation committee "shall presume that all UFT-represented staff employed at a school that meets the targets for the bonus have contributed to the school's achievement to some extent and therefore should share in the bonus." (*Id*.) Further, the compensation committee shall decide "whether to make equal individual awards to all eligible UFT staff, equal awards to all those in the same title, or whether to make differential awards." (*Id*. at 54.) If an individual believes that an award is "arbitrary, capricious or in clear violation of the law or of the procedures and standards [set out in the CBA]," the individual may appeal to an Oversight Committee comprised of the Chancellor and the President of the UFT. (*Id*.)

denied without prejudice plaintiff's motion to appoint *pro bono* counsel. (ECF No. 12, Order, dated 3/10/2011.)[5]

On March 17, 2011, defendants served plaintiff with the instant motion to dismiss. (*See* ECF No. 20-7, Memorandum of Law In Support of Defendants' Motion to Dismiss the Complaint, dated 3/17/2011 ("Def. Mem.").) Plaintiff opposed the motion on April 11, 2011. (*See* ECF No. 20-8, Pl. Opp.) Defendants served plaintiff with their reply and filed the fully briefed motion on April 26, 2011. (*See* ECF No. 20-9, Reply Memorandum of Law In Further Support of Defendants' Motion to Dismiss, dated 4/26/2011 ("Def. First Reply").) Without authority or permission to do so, on May 9, 2011, plaintiff filed an amended reply to plaintiff's initial opposition to defendants' motion to dismiss. (*See* ECF No. 21, Pl. Sur-Reply.) On May 13, 2011, the court granted defendants leave to respond to plaintiff's additional submission and ordered that no further submissions from any party regarding the instant motion would be permitted.

---

[5] By letter dated March 7, 2011, defendants requested a pre-motion conference, indicating their intent to file a motion to dismiss. (*See* ECF No. 11, First Motion for Pre-Motion Conference, dated 3/7/2011.) On March 11, 2011, the court waived the pre-motion conference requirement because plaintiff is proceeding *pro se*. (Order, dated 3/11/2011.) On March 16, 2011, plaintiff filed a motion for default judgment, alleging that defendants' March 7, 2011 letter requesting a pre-motion conference did not constitute an answer to the Complaint within twenty-one days, as required by Fed. R. Civ. P. 12(a)(1)(A)(i). (ECF No. 13, Letter Motion for Default Judgment, dated 3/16/2011.) On March 29, 2011, the court denied plaintiff's motion for default judgment because, pursuant to this court's Individual Rule IV(B)(1), defendants' March 7, 2011 letter requesting a pre-motion conference constituted timely service of a motion pursuant to Fed. R. Civ. P. 12(b). (*See* Order, dated 3/29/2011; ECF No. 14, Response in Opposition, dated 3/28/2011.)

(*See* Order re Letter/Amended Reply and Motion for Extension of
Time, dated 5/13/2011.) Despite the court's order, however,
plaintiff moved for leave to file a third reply to defendants'
motion to dismiss. (See ECF No. 25, Letter Motion for Leave to
File Plaintiff's Reply to Defendant's Response, dated
5/17/2011.) The court denied plaintiff's request. (*See* Order
Denying Motion for Leave to File, dated 5/24/2011.) Defendants
filed their authorized supplemental response on May 18, 2011.
(*See* ECF No. 24, Reply in Opposition to Plaintiff's Amended
Opposition, dated 5/18/2011 ("Def. Second Reply").)

Defendants move to dismiss the Complaint pursuant to
Federal Rules of Civil Procedure 12(b)(2)[6] and 12(b)(6) on the
grounds that (a) the Complaint fails to state a cause of action
under the ADA; and (b) Linder is not subject to suit under the
ADA. (*See* ECF No. 20-7, Def. Mem. at 6.)

## LEGAL STANDARDS

### I. Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of
Civil Procedure 12(b)(6), "a complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief
that it is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.

---

[6] Although defendants cite Rule 12(b)(2) as a basis for their motion to
dismiss, (*See* ECF No. 20-7, Memorandum of Law In Support of Defendants'
Motion to Dismiss the Complaint, dated 3/17/2011, at 1), they have not
provided, and the court has not found, any support for the argument that the
court lacks personal jurisdiction over defendants. Thus, defendants' motion
to dismiss the Complaint pursuant to Rule 12(b)(2) is denied.

Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d

Cir. 2006) (citation and internal brackets omitted). On a
motion to dismiss, the court limits its considerations to: (1)
the factual allegations in the complaint; (2) documents attached
to the complaint as exhibits or incorporated in it by reference;
(3) matters of which judicial notice may be taken; and (4)
documents that are "integral" to the complaint. *Corbett v.
eHome Credit Corp.,* No. 10-CV-26, 2010 WL 1687704, at *2
(E.D.N.Y. Apr. 27, 2010) (citing *Brass v. Am. Film Techs., Inc.*,
987 F.2d 142, 150 (2d Cir. 1993)); *Chambers v. Time Warner,
Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (noting that "even where
a document is not incorporated by reference, the court may
nevertheless consider it where the complaint 'relies heavily
upon its terms and effect,' which renders the document
'integral' to the complaint").

Further, it is "well established that the submissions
of a *pro se* litigant must be construed liberally and interpreted
'to raise the strongest arguments that they suggest.'"
*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.
2006); *see also Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (holding
that a *pro se* party's pleadings must be liberally construed in
his favor and are held to a less stringent standard than the
pleadings drafted by lawyers). In addition, because a *pro se*
plaintiff's complaint must be construed liberally, it is
appropriate for the court to consider the factual allegations in

plaintiff's opposition materials to supplement the allegations in her Complaint. *Burgess v. Goord*, No. 98-CV-2077, 1999 WL 33458, at *2 n.1 (S.D.N.Y. Jan. 26, 1999) (quoting *Gadson v. Goord*, No. 96 Civ. 7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1977)). Nevertheless, even plaintiffs who are proceeding *pro se* must comply with any relevant procedural and substantive rules, and to survive a motion to dismiss, a *pro se* complaint must "state a plausible claim for relief." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950); *see generally Twombly*, 550 U.S. 544.

A plaintiff alleging employment discrimination pursuant to the ADA need not plead a *prima facie* case of discrimination. *Bakeer v. Nippon Cargo Airlines, Co.*, No. 09-CV-3374, 2011 WL 3625103, at *22 (E.D.N.Y. July 25, 2011), *adopted by* 2011 WL 3625083 (E.D.N.Y. Aug. 12, 2011); *see also Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 515 (2002) (noting that the "Federal Rules do not contain a heightened pleading standard for employment discrimination suits"). Instead, the claim "need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lee v. HealthFirst, Inc.*, No. 04-CV-8787, 2006 WL 177175, at *3 (S.D.N.Y. Jan. 25, 2006) (quoting *Swierkiewicz*, 534 U.S. at 512). Thus, "[i]n order to survive a motion to dismiss, a plaintiff must specifically allege the events claimed to

constitute intentional discrimination as well as circumstances giving rise to a plausible inference of . . . discriminatory intent." *Collazo v. BBDO NY*, No. 96-CV-9507, 1997 WL 746447, at *3 (S.D.N.Y. Dec. 3, 1997) (citing *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994)).

## II. Americans with Disabilities Act of 1990

Title I of the ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of discrimination pursuant to the ADA, a plaintiff must show that (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

## DISCUSSION

## I. Employer is Subject to the ADA

Defendants do not dispute that the New York City Department of Education is subject to the ADA. *See Teachout v.*

*N.Y. City Dep't of Educ.*, No. 04-CV-945, 2006 WL 452022, at *3
(S.D.N.Y. Feb. 22, 2006) (DOE did not contest that it was an
employer subject to the ADA).

Defendants properly argue, however, that an individual
cannot be sued in his or her personal capacity under the ADA.
*See Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 154 (S.D.N.Y.
2010) ("Individuals may not be sued in their individual or
personal capacity under the ADA or Rehabilitation Act."); *Mabry
v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 391
(S.D.N.Y. 2011) ("[T]he ADA does not provide for personal
liability on the part of non-employer individuals"); *Darcy v.
Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009) ("[T]he ADA and
ADEA . . . do not provide for actions against individual
supervisors."). Further, "there is no cause of action seeking
monetary damages for employment discrimination under the ADA . .
. against a supervisor in his or her 'official' or
'representative' capacity." *Cohn*, 713 F. Supp. at 154-55
(citing *Fox v. State Univ. of New York*, 497 F. Supp. 2d 446, 451
(E.D.N.Y. 2007)). Here, plaintiff has sued Linder as principal
of I.S. 302. Thus, plaintiff's claims against Linder are
dismissed with prejudice.

## II. Disabled Within the Meaning of the ADA

"The ADA defines a disabled individual as one who has
'(A) a physical or mental impairment that substantially limits

one or more major life activities of such individual[7]; (B) a
record of such impairment; or (C) [is] regarded as having such
impairment.'" *Padilla v. N.Y. State Dep't of Labor*, No. 09-CV-
5291, 2010 WL 3835182, at *3 (S.D.N.Y. 2010) (quoting 42 U.S. §
12102(1)); *see also* 29 C.F.R. § 1630.2(g).[8]  In a disability
discrimination case, the plaintiff bears the burden of
establishing that she is disabled within the meaning of the ADA.
*See Ramirez v. N.Y. City Bd. of Educ.*, 481 F. Supp. 2d 209, 218
(E.D.N.Y. 2007).  The determination of whether a plaintiff has a
disability within this meaning must be made on a case-by-case
basis.  29 C.F.R. § 1630.2(g).  The court must "construe the
definition of disability 'in favor of broad coverage of
individuals under this Act, to the maximum extent permitted by
the terms of this Act.'" *Negron v. City of New York*, No. 10-CV-
2757, 2011 WL 4737068, at *10 (E.D.N.Y. Sept. 14, 2011) (quoting
42 U.S.C. § 12102(4)(A)).

   "[A] plaintiff who is 'regarded as disabled' is
protected under the ADA even if she is not actually disabled."
*Joseph v. North Shore Univ. Hosp.*, No. 08-CV-3799, 2011 WL

---

[7] "Major life activities include, but are not limited to, caring for oneself,
performing manual tasks, seeing, hearing, eating, sleeping, walking, lifting,
bending, speaking, reading, concentrating, thinking, communicating,
and working."  42 U.S.C. § 12102(3)(A).

[8] The EEOC has promulgated administrative regulations implementing the ADA.
*See* 29 C.F.R. § 1630 ("EEOC Regulations").  In the Second Circuit, the EEOC
Regulations are entitled to "great deference" when interpreting the ADA.
*Reeves v. Johnson Controls World Servs.*, 140 F.3d 144, 150 n.3 (2d Cir.
1998).

573582, at *9 (E.D.N.Y. Feb. 15, 2011). Until recently, a
plaintiff who alleged she was "regarded as" having a disability
was required to show that the perceived disability was one that
"substantially limited a major life activity." *Id*.

The ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No.
110-325, 2008 Stat. 3406 (2008) (codified as amended at 42
U.S.C.A. §§ 12101-12102 (1990)), however, set forth a new, more
lenient, standard for determining whether an individual is
"regarded as disabled":

> An individual meets the requirement of
> 'being regarded as having such an
> impairment' if the individual establishes
> that he or she has been subjected to an
> action prohibited under this chapter because
> of an actual or perceived physical or mental
> impairment *whether or not the impairment
> limits or is perceived to limit a major life
> activity*.

*Laurent v. G & G Bus Serv., Inc.*, No. 10-CV-4055, 2011 WL
2683201, at *5 (S.D.N.Y. May 17, 2011) (quoting 42 U.S.C.
§ 12102(3)(A)) (emphasis added), *adopted by* 2011 WL 2693651
(S.D.N.Y. July 11, 2011). Pursuant to this more lenient
standard, an employee is "not required to show that the
disability [s]he is perceived as suffering from is one that
actually limits, or is perceived to limit, a major life
activity." *Darcy v. City of New York*, No. 06-CV-2246, 2011 WL
841375, at *4 (E.D.N.Y. Mar. 8, 2011). Nor does the employee
have to "show that the employer had a reasonable basis for

14

perceiving [her] as suffering from a disability; [the statute] merely requires [her] to show that the employer did so perceive [her]." *Id*. The ADAA specifies, however, that the "regarded as" definition of disability does not apply to impairments that are both transitory and minor. 42 U.S.C. § 12102(3)(B); *see also* 29 C.F.R. §1630.15(f) (2011) ("It may be a defense to a charge of discrimination by an individual claiming coverage under the "regarded as" prong of the definition of disability that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) 'transitory and minor.'"). An impairment is transitory if it has "an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). "Whether the impairment at issue is or would be 'transitory and minor' is to be determined objectively." 29 C.F.R. § 1630.15(f) (2011).

Construing plaintiff's Complaint broadly, as it must, the court finds that plaintiff claims she was regarded as disabled from October 29, 2008 until January 31, 2009. Specifically, plaintiff alleges – and defendants do not dispute – that the DOE granted her a "leave of absence without pay" following her automobile accident. (ECF No. 1, Compl. at 6; ECF No. 21, Pl. Sur-Reply at 3.) Plaintiff attached to her Sur-Reply a "Confidential Medical Report and Medical Evaluation," signed by the school medical director, indicating that plaintiff

was granted a "leave of absence without pay for restoration of
health from December 8, 2008 to January 30, 2009. (ECF No. 21,
Pl. Sur-Reply at 6.)[9]  Thus, plaintiff has sufficiently alleged
that, at least during the period when she was on unpaid
disability leave, defendants regarded her as disabled.  Although
plaintiff's three-month period of disability appears to be
"transitory," it is not apparent from the face of the Complaint
that plaintiff's impairment was "minor."  Accordingly, because
the Complaint must only give defendants fair notice of
plaintiff's claims, the court finds that plaintiff has
sufficiently alleged that she was disabled within the meaning of
the ADA.

**III. Adverse Employment Action**

        An "adverse employment action" for the purpose of a
discrimination claim pursuant to the ADA is a "'materially
adverse change in the terms and conditions of employment.'"
*Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d
Cir. 2004).  A change in working conditions is materially
adverse if it is "more disruptive than a mere inconvenience or
an alteration of job responsibilities."  *Id.* (quoting *Terry v.
Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).  Examples of

---

[9] The court notes that the leave of absence indicated on the Confidential
Medical Report and Medical Evaluation (December 8, 2008 to January 30, 2009),
(ECF No. 21, Pl. Sur-Reply at 6), is shorter than the period plaintiff
alleges she was disabled and absent from school (October 29, 2008 to January
31, 2009), (ECF No. 1, Compl. at 6).

materially adverse changes in working conditions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Terry*, 336 F.3d at 138 (citation omitted).

Plaintiff appears to claim that she suffered two adverse employment actions as a result of her disability: (1) she received "unsatisfactory" performance evaluations for the school years ending in 2008 and 2009; and (2) she received only $1,000 of her expected $3,000 annual bonus.  (*See* ECF No. 1, Compl. at 6.)

As a matter of law, an "unsatisfactory" performance evaluation alone does not amount to an adverse employment action because such an evaluation does not constitute a material change in employment.  *See Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 283-84 (S.D.N.Y. 1999) (finding that negative evaluations alone, without any evidence of a resulting material change in work conditions, did not constitute an adverse action); *Browne v. City Univ. of New York*, 419 F. Supp. 2d 315, 332 (E.D.N.Y. 2005) ("A negative evaluation alone, absent some accompanying adverse result such as demotion, diminution in wages, or other tangible loss, does not constitute an adverse employment action.").  On the other hand, where a negative

performance evaluation results in an adverse change in work conditions, it may be considered an adverse employment action. *See Antonmarchi v. Consol. Edison Co. of New York, Inc.*, No. 03 Civ. 7735, 2008 WL 4444609, at *13 (S.D.N.Y. Sept. 29, 2008) (finding that plaintiff had suffered an adverse employment action where he was denied a wage increase as a result of a negative evaluation); *Cunningham v. Consol. Edison, Inc.*, No. 03-CV-3522, 2006 WL 842914, at *17 (E.D.N.Y. Mar. 28, 2006) (holding that deliberately failing an employee on a training exam that could lead to promotion constitutes an adverse employment action).

Here, plaintiff claims that Linder evaluated her performance as unsatisfactory "for the school-years ended 2008 and 2009." (ECF No. 1, Compl. at 6.) Plaintiff does not allege that these unsatisfactory performance ratings directly resulted in any materially adverse change in the terms and conditions of her employment. Further, plaintiff received her first unsatisfactory rating at the end of the 2008 school year, *before* she allegedly became disabled on October 29, 2008. Accordingly, any claim that her negative performance ratings constituted an adverse employment action must fail.

Nevertheless, plaintiff's claims survive the instant motion to dismiss because she has sufficiently alleged a separate adverse employment action, namely that as a result of

18

her disability leave, she was required to share her allotted bonus with a substitute teacher. (*Id.*) Several courts have found that the denial of a bonus can constitute an adverse employment action. *See, e.g.*, *Ebanks v. Neiman Marcus Grp., Inc.*, 414 F. Supp. 2d 320, 331 (S.D.N.Y. 2006) ("Denial of a raise or merit bonus where one is warranted constitutes an adverse job action."); *Graves v. Deutsche Bank Sec. Inc.*, No. 07-CV-5471, 2010 WL 997178, at *3-4 (S.D.N.Y. Mar. 17, 2010) (finding the denial of a bonus, among other things, to be sufficient to plead an adverse employment action and survive a motion to dismiss); *HealthFirst*, 2006 WL 177175, at *9 (finding the denial of a bonus to be an adverse employment action and sufficient to survive a motion to dismiss); *Hunter v. St. Francis Hosp.*, 281 F. Supp. 2d 534, 545 (E.D.N.Y. 2003) ("It is well settled that the denial of a bonus or a merit increase do constitute a material adverse change."). On the other hand, the denial of a bonus that is entirely discretionary would not constitute an adverse employment action. *See Boyar v. City of New York*, No. 10-CV-65, 2010 WL 4345737, at *3 (S.D.N.Y. Oct. 28, 2010) (where plaintiff did not suggest that bonus was awarded as a matter of course or that he could rely on it, "[d]efendants' decision not to provide discretionary pay did not change the terms or conditions of Plaintiff's employment").

Defendants argue that pursuant to the terms of the CBA, the compensation committee has the discretion to determine the amount of each teacher's bonus.[10] (ECF No. 20-7, Def. Mem. at 8; ECF No. 20-9, Def. First Reply at 5-6.) Defendants further assert that if plaintiff believed that her bonus award was arbitrary, capricious, or in clear violation of the law, she should have filed an appeal with the Oversight Committee, and subsequently filed an Article 78 proceeding in state court. (ECF No. 24, Def. Second Reply at 2.) Plaintiff, on the other hand, insists that the $3,000 year-end bonus was a "contractually designated bonus" to which she was "fully entitled on an equal basis with other staff of [her] status," (ECF No. 21, Pl. Sur-Reply at 5), and that it was "shared among all UFT-represented employees." (ECF No. 20-8, Pl. Opp. at 4.)[11]

At this early stage in the litigation, the court lacks sufficient evidence to conclude as a matter of law that plaintiff's bonus was entirely discretionary. Accordingly, the

_____

[10] Defendants cite to the following provision of the CBA, which states, in relevant part:

> The compensation committee may decide to consider . . . whether to make equal individual awards to all eligible UFT staff, equal awards to all those in the same title, or whether to make differential awards.

(ECF No. 20-5, CBA Agmt. at 54.)

[11] Further, plaintiff's charge of disability discrimination, appended to her Complaint, alleges that the substitute teacher with whom she shared her bonus was unlicensed as a teacher. (ECF No. 1, Compl. at 6.) Thus, the unlicensed substitute and personal friend of the principal does not appear to qualify as a UFT-represented staff member under the terms of the CBA.

court finds that plaintiff has alleged sufficient facts to state a claim that the withholding of $2,000 of her expected bonus was an adverse employment action.

## IV. Discriminatory Intent

At the pleading stage, "a plaintiff is required to set forth factual circumstances from which discriminatory motivation for [an adverse employment] action can be inferred. Allegations supporting motive may include preferential treatment given to similarly situated individuals or remarks that convey discriminatory animus." *Mabry*, 769 F. Supp. 2d at 392 (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)); *see Portee v. Deutsche Bank*, No. 03-CV-9380, 2006 WL 559448, at *8 (S.D.N.Y. Mar. 8, 2006) ("[D]rawing an inference of . . . discrimination from the award of a discretionary bonus requires that such an award differ meaningfully from those awarded to other, similarly situated individuals").

As evidence of defendants' discriminatory intent, plaintiff asserts that other teachers who took leave during the school year, as well as teachers who received unsatisfactory ratings, were not required to share their bonus with substitute teachers. (*See* ECF No. 1, Compl. at 6; *see also* ECF No. 21, Pl. Sur-Reply at 4.) Indeed, plaintiff alleges that teachers whose classes were taught by the same substitute teacher who covered for plaintiff during her absence still received their full

bonuses.  (ECF No. 20-8, Pl. Opp. at 4.)  Defendants contend

that plaintiff has failed to show an inference of discrimination

because she fails to identify by name other similarly situated

teachers who were absent during the school year for reasons

other than medical leave, yet still received their full bonus.

(ECF No. 20-9, Def. First Reply at 6, 2.)  "[W]hether or not

[the plaintiff] has correctly defined which employees are

similarly situated to her . . . is a question of fact that is

not appropriately resolved on a motion to dismiss."

*HealthFirst*, 2006 WL 177175, at *7 (citations omitted).  For

purposes of combating defendants' motion, plaintiff has

adequately pleaded the circumstances she believes to be

discriminatory, thereby giving defendants fair notice of her

claims and the grounds upon which such claims rest.  A more

detailed account of the alleged discriminatory conditions of

employment is not required at this time.  Accordingly,

defendants' motion to dismiss is denied.

### CONCLUSION

        For the reasons stated above (1) defendants' motion to

dismiss plaintiff's claims against defendant Linder is granted

with prejudice; and (2) defendants' motion to dismiss

plaintiff's claims against defendant DOE is denied.  The parties

are strongly encouraged to engage in settlement negotiations

rather than spend additional time, money, and resources on

further motion practice. Defendants are directed to serve a copy of this Memorandum and Order on plaintiff and to file a declaration of service on the docket by January 19, 2012.


**SO ORDERED**

Dated:     January 18, 2012
           Brooklyn, New York


                            _____/s/_____
                            KIYO A. MATSUMOTO
                            United States District Judge
                            Eastern District of New York