UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
CATHARINE E. DAVIS,

                        Plaintiff,          **MEMORANDUM AND ORDER**
                                            10-cv-3812 (KAM)(LB)

        -against-


NEW YORK CITY DEPARTMENT OF EDUCATION,

                        Defendant.
---------------------------------------X

**MATSUMOTO, United States District Judge:**

        On August 17, 2010, Catharine E. Davis, plaintiff *pro
se*, commenced this action pursuant to the Americans with
Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112–12117, as
amended, alleging discrimination in the terms and conditions of
her employment by the New York City Department of Education
("DOE," or "defendant") and Lisa Linder ("Linder"), the
principal of Junior High School ("J.H.S.") 302.  Defendants
filed a motion to dismiss plaintiff's claims on April 26, 2011,
and this court subsequently granted the motion to dismiss all
claims against Linder with prejudice but denied the motion to
dismiss plaintiff's claims against DOE. (ECF No. 20, Motion to
Dismiss, 4/26/11; ECF No. 27, Order Granting in Part and Denying
in Part Motion to Dismiss, 1/18/12.)

        Pending before the court are DOE's motion for summary
judgment and plaintiff's motion for summary judgment.  (ECF No.

60, Motion for Summary Judgment by DOE, 7/2/13; ECF No. 61,

Motion for Summary Judgment by Catharine E. Davis, 7/2/13.) For

the reasons provided below, the court grants defendant's motion

for summary judgment in its entirety and denies plaintiff's

motion for summary judgment.

## BACKGROUND

The following facts are taken from defendant's

statement of undisputed material facts pursuant to Local Civil

Rule 56.1. (Defendant's Local Rule 56.1 Statement of Undisputed

Material Facts ("Def's 56.1 Stmt."), 4/15/13.)[1] The court has

considered whether the parties have proffered admissible

evidence in support of their positions and has viewed the facts

in the light most favorable to the nonmoving party with respect

to each motion.

---

[1] During a telephonic pre-motion conference on February 7, 2013, the court
explained the process of moving for summary judgment to plaintiff and
instructed plaintiff to include a statement of undisputed facts to accompany
her summary judgment motion. (Minute Entry dated 2/7/13.) Plaintiff was
also instructed in a subsequent order "to follow the court's orders over any
contrary instructions found in the pro se manual." (Order dated 4/3/13.)
Plaintiff has instead submitted a "Statement of Facts" that largely consists
of allegations and includes almost no citations or references to admissible
evidence. (ECF No. 61, Declaration of Plaintiff in Support of Motion for
Summary Judgment ("Pl. Dec."), 4/11/13.) "The local rule does not absolve
the party seeking summary judgment of the burden of showing that it is
entitled to judgment as a matter of law, and a Local Rule 56.1 statement is
not itself a vehicle for making factual assertions that are otherwise
unsupported in the record. Where, as here, the record does not support the
assertions in a Rule 56.1 statement, those assertions should be disregarded
and the record reviewed independently." *Holtz v. Rockefeller & Co.*, 258 F.3d
62, 74 (2d Cir. 2001).

## I.   Plaintiff's Employment

Plaintiff began working as a substitute teacher at P.S. 270 in December 1998 for the DOE, which was then known as the Board of Education of the City School District of the City of New York.  (Def's 56.1 Stmt. ¶ 1.)  After becoming licensed to teach health, Plaintiff began teaching health at Intermediate School 218 around 2000.  (*Id.* ¶ 2.)  In September 2002, plaintiff transferred to J.H.S. 302 Rafael Cordero ("J.H.S. 302") in Brooklyn and taught there from 2002 to 2009.  (*Id.* ¶ 3.)

## II.  Bonus Program

The terms and conditions of plaintiff's employment with DOE are governed by a collective bargaining agreement ("CBA") between plaintiff's union, the United Federation of Teachers ("UFT"), and DOE.  (*Id.* ¶ 4.)  The relevant CBA in this case between the UFT and DOE was effective from October 31, 2007 through October 31, 2009.  (*Id.*)

In the 2007-2008 school year, DOE and the UFT established a school-wide bonus program (the "Bonus Program"), which awarded educators cash bonuses for student achievement. (*Id.* ¶ 5.)  The Bonus Program targeted the highest-need schools in New York City, which were jointly identified by DOE and the UFT.  (*Id.* ¶ 6.)  A school could participate in the Bonus Program if at least 55 percent of the UFT-represented school

staff voted to do so, and the principal of the school assented. (*Id.* ¶ 7.) A school that chose to participate in the Bonus Program became eligible for a lump sum dollar award (the "pool") that was distributed to the school as a whole based on certain performance criteria. (*Id.* ¶ 8.) The amount of a school's pool was calculated by multiplying the number of full-time UFT-represented employees on the school's table of organization by 3,000. (*Id.*)

Under the CBA, each participating school had the authority "to determine the methodology for distributing any award it earn[ed] for school-wide performance," by establishing a compensation committee, which was composed of the principal, the principal's designee (e.g., an assistant principal), and two UFT-represented staff members elected in a chapter-supervised election by the UFT-represented staff. (*Id.* ¶¶ 9-10.) The CBA provided that:

> The compensation committee will determine, by consensus, matters related to both eligibility for and the size of individual awards to UFT-represented staff members. However, the compensation committee shall presume that all UFT-represented staff employed at a school that meets the targets for the bonus have contributed to the school's achievement to some extent and therefore should share in the bonus.
>
> (*Id.* ¶ 11.)

The CBA further stated that the compensation committee could consider "whether to make equal individual awards to all eligible UFT staff, equal awards to all those in the same title, or whether to make differential awards," and that, in making awards, the committee could "make particular determinations for individuals who served at the school for less than a full academic year." (*Id.* ¶¶ 12-13.)  In addition, the CBA provided for the establishment of an Oversight Committee, comprised of the Chancellor and President of the UFT, or their designees, which would review appeals of individual awards and modify a determination of a school's compensation committee if it found, by consensus, that the committee's decision was arbitrary, capricious, or in clear violation of the law or the procedures and standards of the Bonus Program.  (*Id.* ¶ 14.)

A list of Frequently Asked Questions and answers ("FAQ") about the Bonus Program explained that the compensation committee was not required to give each UFT member $3,000 or the same amount, but "can designate any employee to receive any amount it wishes that employee to receive." (*Id.* ¶ 15.)  The FAQ also stated that, while "the Compensation Committee may not distribute the award based on seniority," and "the total bonus pool available to the Compensation Committee will be based on the number of full-time UFT-members on the school's Table of Organization as of October 31, the *percentage* of the school

5

award that each employee receives is determined by the Compensation Committee." (*Id.* (emphasis in original).) The FAQ further provided that "Compensation Committees may elect to award each member equally, to differentiate by title, or to differentiate by individual, as long as all the recipients are UFT-represented employees." (*Id.*)

At the end of the 2007-2008 school year, the staff at plaintiff's school, J.H.S. 302, voted to participate in the Bonus Program for the 2008-2009 school year. (*Id.* ¶ 17.) Plaintiff admitted during her deposition that she was "really not sure" how the compensation committee made its decisions but acknowledged that the committee made final decisions concerning the distribution of Bonus Program awards to staff. (*Id.* ¶ 16.)

### III. Plaintiff's Bonus

Plaintiff was involved in an automobile accident on October 29, 2008. (*Id.* ¶ 18.) After the accident, plaintiff submitted an application to DOE to go on leave without pay, which DOE approved, and plaintiff was excused from her duties for medical reasons from December 8, 2008 through January 30, 2009. (*Id.* ¶¶ 19-20.)[2] Plaintiff testified at her deposition that she was medically cleared to return to work on January 31, 2009, but did not return until March 1, 2009, because of grand

---

[2] Plaintiff appears to have also been absent from school for medical reasons resulting from her injury from October 29, 2008, to December 7, 2008. (Pl. Dec. at Exs. 1, 3.)

jury obligations for the entire month of February. (*Id.* ¶ 21.)
Plaintiff was thus absent from teaching from October 29, 2008,
until March 1, 2009, or approximately four months. (*Id.* ¶ 22.)
In addition to those four months, and not including the days
plaintiff was on leave without pay or on jury duty, plaintiff
was absent for eight other days between August 2008 and March
31, 2009.[3]

Plaintiff testified that Ms. Byrd, a substitute
teacher at J.H.S. 302, was brought in as a substitute in
September 2008 to cover for Elizabeth Giampapa, a sixth grade
teacher who was out on maternity leave. (*Id.* ¶ 24.)[4]  After Ms.
Giampapa returned from leave in November 2008, Ms. Byrd began
covering plaintiff's class that same month. (*Id.* ¶ 25.)  Thus,
according to plaintiff, Ms. Byrd worked as a substitute teacher
at J.H.S. 302 from September 2008 to March 2009, or six months.
(*Id.* ¶ 26.)

---

[3] Defendant appears to include all of plaintiff's absences in October 2008 and
November 2008 in asserting that plaintiff was absent for 27 days in addition
to being out of school for four months due to medical reasons and grand jury
duty.  (Def's 56.1 Stmt. ¶¶ 22-23.)  But these 27 days include plaintiff's
absences for medical reasons in October 2008 and November 2008.  (Pl. Dec. at
Exs. 1, 3.)  Accordingly, the court discounts three of plaintiff's absences
in October 2008 and all 16 of plaintiff's absences in November 2008 from
defendant's calculation because these absences were for medical reasons and
finds that plaintiff was absent for eight additional days between August 2008
and March 31, 2009, in addition to the four months she was absent for medical
reasons or for grand jury duty from October 29, 2008, through March 31, 2009.

[4] Defendant refers to Ms. Byrd's first name as "Katrina," (ECF No. 60, Motion
for Summary Judgment by DOE, 7/2/13, at 11), but a DOE record identifies her
first name as "Kaye," (Defendant's Counter-Statement to Plaintiff's Statement
of Undisputed Facts Pursuant to Local Rule 56.1 ("Def's Counter-Statement"),
6/17/13, at Ex. Q).  This Memorandum & Order will refer to Ms. Byrd as Ms.
Byrd.

On or about November 1, 2009, staff members at J.H.S. 302 were awarded bonuses under the Bonus Program based on the school's satisfactory performance during the 2008-2009 school year. (*Id.* ¶ 27.) Plaintiff received a Bonus Program award of $1,000. (*Id.* ¶ 28.) On November 8, 2009, plaintiff filed a charge of disability discrimination with DOE's Office of Equal Opportunity ("OEO"), complaining that she had received a $1,000 bonus rather than a $3,000 bonus, and that Ms. Byrd, the substitute teacher who had covered plaintiff's class during plaintiff's absence, had received the remaining $2,000 of plaintiff's bonus. (*Id.* ¶¶ 29-30.) Plaintiff alleged that "no other staff was denied [sic] full bonus." (*Id.* ¶ 30.)

Plaintiff testified at her deposition that she did not know the exact amount of Ms. Byrd's bonus, but that Oral Brady, the leader of plaintiff' union chapter, had told plaintiff that she would be sharing her Bonus Program award with Ms. Byrd. (*Id.* ¶ 31.) Plaintiff also testified that, while she did not know whether other substitutes had received portions of bonuses from other teachers, she had assumed all the other teachers at her school had received $3,000 bonuses because they did not complain about having to share their bonuses. (*Id.* ¶¶ 32-33.) In addition, plaintiff testified that she knew there was no guarantee she would receive a $3,000 bonus under the bonus program if the school met its performance criteria. (*Id.* ¶ 35.)

8

Plaintiff stated in her OEO Complaint that the
compensation committee at her school, which she believed
consisted of two teachers, an administrator, and Principal
Linder, was established "to determine disbursement of expected
bonus." (*Id.* ¶¶ 36-37.)  On November 9, 2009, plaintiff e-
mailed Linder asking why she had received a Bonus Program award
of $1,000 instead of $3,000, but Linder replied to plaintiff's
e-mail on November 11, 2009, and instructed plaintiff to ask her
UFT representative. (*Id.* ¶¶ 38-39.)  Plaintiff testified at her
deposition that she had spoken to her UFT representative, Allan
Weinstein, and he had told her the union did not have anything
to do with her bonus. (*Id.* ¶ 40.)  When plaintiff was asked at
her deposition whether she might have been required to share her
bonus with Ms. Byrd because Ms. Byrd was a friend of principal
Linder, plaintiff replied: "Yes.  That's most of my bonus."
(*Id.* ¶ 45.)

But the OEO investigation shows that the compensation
committee at J.H.S. 302 decided that, in cases where a teacher
was absent for part of the school year, the teacher's bonus
would be shared with the substitute teacher who assumed the
responsibilities of the absent teacher. (Def's Counter-
Statement at Ex. Q.)  Additionally, the OEO investigation found
that, with the exception of plaintiff and three other employees,
most of the staff at J.H.S. 302, including Ms. Byrd, received

$3,000 bonuses.  (Def's Counter-Statement at Ex. R.)  Finally, the OEO "found no evidence to support Ms. Davis' [sic] allegation that Principal Linder discriminated against Ms. Davis based on disability."  (Def's Counter-Statement at Ex. Q.)

Plaintiff testified during her deposition that at least two other J.H.S. 302 staff members, Elizabeth Giampapa and Rosa Liverpool, whom plaintiff believed were in "non-attendance" for two or more months during the 2008-09 school year, were treated differently than plaintiff with respect to Bonus program awards.  (Def's 56.1 Stmt. ¶ 57.)  In response to a court order, the DOE searched records and found that Ms. Giampapa, who was on maternity leave from September 18, 2008 to November 14, 2008, or less than two months, received a $3,000 bonus from the Bonus Program for the 2008-09 school year, (*id.* ¶ 62-63), and that Ms. Liverpool, a guidance counselor at J.H.S. 302, did not take any leave during the 2008-09 school year, was reassigned to a reassignment center effective March 30, 2009, and received a $3,000 bonus from the Bonus Program for the 2008-09 school year, (*id.* ¶¶ 64-65.)  The DOE also found that one teacher at J.H.S. 302, Tanya Singh, had begun her leave on August 30, 2007, was on leave for the entire 2008-09 school year, and did not receive any bonus from the Bonus Program for the 2008-09 school year. (*Id.* ¶ 58-60.)

## IV. Plaintiff's EEOC Complaint

On June 4, 2010, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination. (*Id.* ¶ 41.) Plaintiff alleged that she was involved in an automobile accident on October 29, 2008, and had subsequently been disabled for three months, until January 31, 2009. (*Id.* ¶ 42.) In her EEOC complaint, plaintiff alleged that her school's union chapter leader told her she would have to share her $3,000 bonus with the substitute teacher who had covered her class during her absence, that this substitute teacher was unlicensed and a personal friend of Principal Linder, and that this substitute teacher "must have" received two-thirds of plaintiff's $3,000 bonus. (*Id.* ¶¶ 43-44.) Plaintiff also stated in her EEOC complaint that she knew of teachers who had received unsatisfactory year-end ratings, had been on maternity leave, or were otherwise not in attendance for the full school year who did not have to share their bonuses, and that she had been discriminated against by Principal Linder and DOE because she had been denied her "appropriate bonus as a full-time, assigned teacher" as a result of her disability. (*Id.* ¶¶ 46-47.)

On June 24, 2010, the EEOC issued a right to sue letter to plaintiff, which stated that "[b]ased upon its investigation, the EEOC is unable to conclude that the

information obtained establishes violations of the statutes."
(*Id.* ¶ 48.)  The EEOC advised plaintiff that it had evaluated
her charge and the information she supplied, and that "[b]ased
on this evaluation, it is highly unlikely that subsequent
investigation or investment of further resources would result in
a finding under Federal laws."  (*Id.* ¶ 49.)

Plaintiff filed the instant action on August 17, 2010.
(ECF No. 1, Complaint, 8/17/10.)

## DISCUSSION

### I.   Summary Judgment Standard

The court shall grant summary judgment "if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "[T]he mere existence of *some* alleged
factual dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the requirement
is that there be no *genuine* issue of *material* fact."  *Anderson
v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in
original); *see also Opals on Ice Lingerie, Designs by
Bernadette, Inc. v. Bodylines, Inc.*, 320 F.3d 362, 368 (2d Cir.
2003) (same).  "A fact is material if it might affect the
outcome of the suit under the governing law."  *Fincher v.
Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir.
2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d

Cir. 2008)).  "An issue of fact is genuine if the evidence is

such that a reasonable jury could return a verdict for the

nonmoving party."  *Id.* (quoting *Roe*, 542 F.3d at 35).

Additionally, no genuine issue of material fact exists "unless

there is sufficient evidence favoring the nonmoving party for a

jury to return a verdict for that party.  If the evidence is

merely colorable, or is not significantly probative, summary

judgment may be granted."  *Anderson*, 477 U.S. at 249-50

(internal citations omitted).

The moving party carries the burden of demonstrating

"the absence of a genuine issue of material fact."  *FDIC v.*

*Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The court

must construe the facts in the light most favorable to the

nonmoving party and all reasonable inferences and ambiguities

must be resolved against the moving party.  *Id.*  Nevertheless,

the nonmoving party may not rest merely on allegations or

denials but must instead set out specific facts showing a

genuine issue for trial.  *See id.* ("To defeat a summary judgment

motion, the non-moving party must do more than simply show that

there is some metaphysical doubt as to the material facts, and

may not rely on conclusory allegations or unsubstantiated

speculation.") (internal quotation and citation omitted).  When

cross-motions for summary judgment are made, the standard is the

same as that for individual motions for summary judgment. *See*

*Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir.

2001). Each motion must be considered independently of the

other and, when evaluating each motion, the court must consider

the facts in the light most favorable to the nonmoving party.

*Id*.

    "Employment discrimination cases raise special issues

on summary judgment." *Kenney v. New York City Dep't of Educ.*,

No. 06 Civ. 5770, 2007 U.S. Dist. LEXIS 77926, at *7 (S.D.N.Y.

Oct. 22, 2007). Specifically, employment discrimination cases

that involve a dispute concerning the "employer's intent and

motivation," may not be suitable for summary judgment. *Id.; see*

*also Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

The Second Circuit has noted, however, that "we went out of our

way to remind district courts that the impression that summary

judgment is unavailable to defendants in discrimination cases is

unsupportable." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41

(2d Cir. 2000) (internal quotation and citation omitted); *see*

*also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

148 (2000) ("trial courts should not 'treat discrimination

differently from other ultimate questions of fact'") (quoting

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993));

*Holcomb*, 521 F.3d at 137 ("Even in the discrimination context,

however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

## II. Americans with Disabilities Act of 1990

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of discrimination pursuant to the ADA, a plaintiff must show that (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA or perceived to be disabled by her employer; (3) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).[5]

Additionally, "[c]laims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green* . . . . 'A plaintiff must establish a prima facie case; the employer must offer

---

[5] Defendant does not dispute that it is subject to the ADA, that plaintiff was disabled within the meaning of the ADA, or that plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations.

through the introduction of admissible evidence a legitimate

non-discriminatory reason for the [adverse action]; and the

plaintiff must then produce evidence and carry the burden of

persuasion that the proffered reason is a pretext.'"  *McBride v.

BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)

(quoting *Sista v. CDC Ixis N. Am. Inc.*, 445 F.3d 161, 169 (2d

Cir. 2006)).

### A. Adverse Employment Action

An "adverse employment action" for the purpose of a

discrimination claim pursuant to the ADA is a "'materially

adverse change' in the terms and conditions of employment."

*Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755

(2d Cir. 2004) (citing *Richardson v. New York State Dep't of

Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)).  A change in

working conditions is materially adverse if it is "more

disruptive than a mere inconvenience or an alteration of job

responsibilities."  *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d

128, 138 (2d Cir. 2003)).  "There are no 'bright-line rules' for

determining whether an employee has suffered an adverse

employment action."  *Islamic Soc'y of Fire Dep't Pers. v. City

of New York*, 205 F. Supp. 2d 75, 83 (E.D.N.Y. 2002) (quoting

*Richardson*, 180 F.3d at 446).  Still, materially adverse changes

in working conditions include "termination of employment, a

demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, significantly
diminished material responsibilities, or other indices . . .
unique to a particular situation." *Terry*, 336 F.3d at 138
(quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636,
640 (2d Cir. 2000)).

### 1. Discretionary Bonus

The denial of a bonus that an employee either expects
to receive as a matter of course or that an employee is entitled
to receive as a result of her performance is, like a reduction
in an employee's salary, a "'materially adverse change' in the
terms and conditions of employment" and constitutes an adverse
employment action. *Sanders*, 361 F.3d at 755 (citing *Richardson*,
180 F.3d at 446); *see also Graves v. Deutsche Bank Sec. Inc.*,
No. 07-CV-5471, 2010 WL 997178, at *2-4 (S.D.N.Y. Mar. 17, 2010)
(refusing to award employee "substantial bonus for his previous
work" constituted adverse action); *Ebanks v. Neiman Marcus
Grp., Inc.*, 414 F. Supp. 2d 320, 331 (S.D.N.Y. 2006) (stating
that "[d]enial of a raise or merit bonus *where one is warranted*
constitutes an adverse job action" in discussing raise and
bonuses plaintiff alleged she should have received after a
promotion) (emphasis added); *Lee v. HealthFirst*, *Inc.*, No. 04
Civ. 8787, 2006 WL 177175, at *3, *9 (S.D.N.Y. Jan. 25, 2006)
(denying plaintiff quarterly bonus check was adverse employment
action); *Hunter v. St. Francis Hosp.*, 281 F. Supp. 2d 534, 545

(E.D.N.Y. 2003) (noting that "[i]t is well settled that the denial of a bonus or a merit increase do constitute a material adverse change" in discussing productivity bonus based on employee performance).

On the other hand, a discretionary bonus is "something only adventitiously connected with the workplace . . . . [and] the denial of [such] a bonus is inherently ambiguous . . . because [the employee] didn't count (or at least should not have counted) on it." *Hunt v. City of Markham*, 219 F.3d 649, 654 (7th Cir. 2000). Thus, if the plaintiff can "cite[] no facts suggesting that discretionary pay was awarded as a matter of course or that [she] was otherwise entitled to expect or rely on it," the employer's decision not to award a discretionary bonus does "not change the terms or conditions of Plaintiff's employment" and consequently cannot constitute an adverse employment action. *Boyar v. City of New York*, No. 10-CV-65, 2010 WL 4345737, at *3 (S.D.N.Y. Oct. 28, 2010) (citing *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006)); *see also Nasserizafar v. Ind. DOT*, No. 13-1827, 2013 U.S. App. LEXIS 19899, at *5 (7th Cir. Sept. 30, 2013) ("Withholding a discretionary raise or bonus is not an adverse employment action"); *Scott v. Teachers Ins. & Annuity Ass'n of Am.*, No. 3:12-CV-00697, 2013 U.S. Dist. LEXIS 84612, at *16 (W.D.N.C. June 14, 2013) ("the non-receipt of a discretionary

bonus does not constitute an adverse employment action");

*Schamann v. O'Keefe*, 314 F. Supp. 2d 515, 531 (D. Md. 2004)

(same).

In this case, plaintiff has alleged that she suffered an adverse employment action because she received a $1,000 bonus rather than a $3,000 bonus.[6] (ECF No. 1, Complaint, 8/17/10, at 4.) The CBA, however, states that the compensation committee at a participating school could consider "whether to make equal individual awards to all eligible UFT staff, equal awards to all those in the same title, or whether to make differential awards," and that, in making awards, the compensation committee could "make particular determinations for individuals who served at the school for less than a full academic year." (Def's. 56.1 Stmt. ¶ 13.)[7] The FAQ for the Bonus Program also explained that the compensation committee was *not* required to give each UFT member $3,000, but could "designate any employee to receive *any amount it wishes that employee to receive*" and distribute awards according to any basis other than seniority. (*Id.* ¶ 15 (emphasis added).) Furthermore, plaintiff admitted during her deposition testimony that she knew there was no guarantee she

---

[6] This court has already ruled that "any claim that [plaintiff's] negative performance ratings constituted an adverse employment action must fail." (ECF No. 27, Order Granting in Part and Denying in Part Motion to Dismiss, 1/18/12, at 18.)

[7] The total bonus pool was distributed to the school as a whole based on certain performance criteria, (Def's 56.1 Stmt. ¶ 8), but the school's compensation committee had wide discretion in distributing the bonus pool among employees.

would receive a $3,000 bonus under the bonus program if the school met its performance criteria. (*Id.* ¶ 35.)[8] Because plaintiff "didn't count (or at least should not have counted) on" a $3,000 bonus, *Hunt*, 219 F.3d at 654, and was not "otherwise entitled to expect or rely on" a $3,000 bonus, *Boyar*, 2010 WL 4345737 at *3, the evidence in the record conclusively shows that bonuses distributed through the Bonus Program were completely discretionary. Accordingly, plaintiff has failed to establish that she suffered an adverse employment action as a result of receiving a discretionary bonus of only $1,000 rather than $3,000. (Def's. 56.1 Stmt. ¶¶ 28-29.)

## B. Causation

Even if plaintiff had suffered an adverse employment action, her claim would still fail because she cannot show causation. "In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show . . . that he suffered an adverse employment action *because of* his disability." *Brady*, 531 F.3d 127 at 134. A "[p]laintiff must establish that his discharge occurred under circumstances that give rise to an inference of discrimination on the basis of his membership in a protected class." *Gibbs v. City of New York*, No. 02-CV-2424, 2005 U.S. Dist. LEXIS 3169, at *26-27 (E.D.N.Y.

---

[8] Plaintiff has not pointed to any facts in the record, nor has this court been able to find any facts, that would show she should have expected to receive a $3,000 bonus instead of a $1,000 bonus or that she was entitled to a $3,000 bonus by virtue of her performance.

Jan. 14, 2005) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). This "element of a prima facie case may be satisfied in a variety of ways including: actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, [or] preferential treatment given to employees outside the protected class." *Id.* (citation omitted).

Still, "[a]n employee does not experience an adverse employment action every time her employer pays a bonus to any other employee." *Milligan v. Citibank, N.A.*, No. 00 Civ. 2793, 2001 U.S. Dist. LEXIS 16105, at *15-16 (S.D.N.Y. Sept. 25, 2001). Although "[d]enying an employee a bonus that is granted to similarly situated employees who performed equally well might arguably be an adverse action . . . the other employee[s] receiving the bonus[es] would have to be similarly situated." *Id.; see also Portee v. Deutsche Bank*, No. 03 Civ. 9380, 2006 U.S. Dist. LEXIS 9153, at *21-22 (S.D.N.Y. Mar. 7, 2006) ("Drawing an inference of . . . discrimination from the award of a . . . bonus requires that such an award differ meaningfully from those awarded to other, similarly situated individuals."); *cf. Marinelli v. Chao*, 222 F. Supp. 2d 402, 420 (S.D.N.Y. 2002) (employee who received a "usual" bonus instead of a "high award" could not show an adverse employment action).

In the instant case, the record shows that plaintiff was absent from the classroom from October 29, 2008, until March

1, 2009, as well as eight additional days between August 2008
and March 31, 2009, or a total of over four months during the
2008-09 school year. *See supra* Background Section III. One
employee at J.H.S. 302, Tanya Singh, who was on leave for the
entire 2008-09 school year, a longer time period than plaintiff,
did not receive any bonus from the Bonus Program for that school
year. (Def's 56.1 Stmt. ¶¶ 59-60.) While two other employees
at J.H.S. 302 who were identified by plaintiff as being in "non-
attendance" for at least two months of the 2008-09 school year –
Elizabeth Giampapa and Rosa Liverpool – did receive $3,000
bonuses, neither employee was on leave for a time period even
close to four months. (*Id*. ¶¶ 60-61, 64-65.) Giampapa was on
maternity leave for approximately two months, (*id.* ¶¶ 60-61),
and Liverpool, a guidance counselor, was not on leave but
reassigned to a reassignment center effective March 30, 2009,
(*id.* ¶¶ 64-65). Thus, plaintiff has failed to demonstrate that
the distribution of her bonus took place under circumstances
giving rise to an inference of discrimination because she has
not identified any other employee who received a $3,000 bonus
after being absent from the classroom for a time period close to
four months. As a result, plaintiff has not established the
element of causation necessary to establish a *prima facie* claim
under the ADA.

## C. Pretext

If an employer "offer[s] through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse action] . . . the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *McBride*, 583 F.3d at 96 (quotation and citation omitted); *see also James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) ("[O]nce the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.").

Defendant asserts that the compensation committee had discretion to "make particular determinations for individuals who served at the school for less than a full academic year," (Def's. 56.1 Stmt. ¶ 13), and properly exercised that discretion to award plaintiff $1,000 because she was absent from the school for over four months of the 2008-09 school year, *see supra* Background section III. (Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, 4/15/13, at 10-13.) Defendant also argues that plaintiff received a $1,000 bonus instead of a $3,000 bonus because of her large number of absences from school, not because she was disabled, and claims that it was legitimate for the compensation committee to award a

bonus to Ms. Byrd for covering classes at plaintiff's school,
J.H.S. 302, from September 2008 until March 2009. (*Id.*)[9]

Plaintiff has failed to show that defendant's stated
reasons are pretextual or improper in any way. (*See* Memorandum
of Law in Support of Plaintiff Motion for Summary Judgment,
4/11/13; Declaration of Plaintiff in Support of Motion for
Summary Judgment, 4/11/13.) To the contrary, plaintiff conceded
in her "Statement of Facts" that the "reduction of [plaintiff's]
award was due to non-attendance during the bonus year, as to
require replacement coverage of her teaching program."
(Declaration of Plaintiff in Support of Motion for Summary
Judgment, 4/11/13, at 6-7.) Based on undisputed evidence in the
record, the court finds that defendant correctly exercised its
discretion under the CBA and determined that plaintiff was
entitled to a $1,000 bonus, rather than a $3,000 bonus, as a
result of her large number of absences during the 2008-09 school
year, that the compensation committee properly determined Ms.
Byrd was entitled to a bonus as a result of her work as a
substitute for a large portion of the school year, and that
defendant's stated reasons for awarding plaintiff a $1,000 bonus

---

[9] Although plaintiff has claimed that Ms. Byrd received a $2,000 bonus at
plaintiff's expense, evidence in the record shows that Ms. Byrd in fact
received a $3,000 bonus. (Def's Counter-Statement at Ex. R.)

instead of a $3,000 bonus were not pretext for discriminating

against plaintiff because of plaintiff's disability.[10]

---

[10] In her declaration and motion papers in connection with summary judgment briefing, plaintiff for the first time asserted a due process claim under 42 U.S.C. § 1983. (Memorandum of Law in Support of Plaintiff Motion for Summary Judgment, 4/11/13; Declaration of Plaintiff in Support of Motion for Summary Judgment, 4/11/13.)  A party "cannot raise unpleaded claims for the first time on a motion for summary judgment."  *La Salle Bank N.A. v. CIBC Inc.*, No. 08 Civ. 8426, 2011 U.S. Dist. LEXIS 119373, at *6 (S.D.N.Y. Oct. 17, 2011) (citing *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006)). Plaintiff's 42 U.S.C. § 1983 claim is thus dismissed.  To the extent plaintiff relies on her facts and arguments in support of her ADA claim in alleging her 42 U.S.C. § 1983 claim, her 42 U.S.C. § 1983 claim is also dismissed for the reasons stated in this Memorandum & Order.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted in its entirety and plaintiff's motion for summary judgment is denied in its entirety. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The clerk of court is respectfully requested to enter judgment for defendant, mail a copy of the judgment and this Memorandum & Order to plaintiff, and to close this case.

**SO ORDERED**

Dated:     March 7, 2014
           Brooklyn, New York


                              _____/s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York